1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   GLENDA A. GERMAN,                      No. CIV S-09-2976-CMK

12              Plaintiff,

13        vs.                               <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16   _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

21   before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-

22   motion for summary judgment (Doc. 19).  For the reasons discussed below, the court will grant

23   plaintiff's motion for summary judgment and remand this matter for further proceedings.

24   / / /

25   / / /

26   / / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on July 30, 2007, alleging an onset of disability on November 15, 2006, due to physical impairments. (Certified administrative record ("CAR") 74-79, 84-92). Specifically, plaintiff claims disability based on impairments due to migraine headaches, left leg swelling due to mitrovalve prolapse, irritable bowel syndrome, and swollen colon. (CAR 85). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on May 1, 2009, before Administrative Law Judge ("ALJ") Mark Ramsey. In a June 5, 2009 decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.      The claimant met the insured status requirements of the Social
        Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity since
        November 15, 2006, the alleged onset date (20 CFR 404.1571 *et
        seq.* and 416.971 *et seq.*).

3.      The claimant has the following severe impairments:  migraines,
        obesity, borderline to low average intellectual functioning, and
        history of controlled gastroesophageal reflux disease, irritable
        bowel syndrome, and ulcerative colitis (20 CFR 404.1520(c) and
        416.920(c)).

4.      The claimant does not have an impairment or combination of
        impairments that meets or medically equals one of the listed
        impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
        404.1525, 404.1526, 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned
        finds that the claimant has the residual functional capacity to
        perform light work as defined in 20 CFR 404.1567(b) and
        416.967(b), except limited to simple, repetitive tasks consistent
        with unskilled work.

6.      The claimant is capable of performing past relevant work as a
        assembler and pricer.  This work does not require the performance
        of work-related activities precluded by the claimant's residual
        functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the
        Social Security Act, from November 15, 2006 through the date of
        this decision (20 CFR 404.1520(f) and 416.920(f)).

(CAR 8-17).  After the Appeals Council declined review on September 3, 2009, this appeal

followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is:

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in his assessment of her RFC by failing to address the findings of a vocational consultant, assessing her credibility, and evaluating the medical opinions.  In addition, she argues the ALJ's evaluation of her past work was inadequate and that this action should be remanded for immediate payment.

### A.    MEDICAL OPINIONS

Plaintiff contends the ALJ improperly evaluated the medical opinions, in adopting Dr. Walk's opinion that plaintiff could work on a regular sustained basis.  She claims this opinion was not supported by the evidence, and the ALJ should have adopted Dr. Dalton's assessment instead.

The weight given to medical opinions depends in part on whether they are

proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

In his decision, the ALJ discussed both opinions at issue:

> With respect to her mental limitations, a State agency psychologist, Dr. [Dalton[3]] initially opined that the claimant has a good ability to remember and understand simple instructions as well as work place procedures; is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions; appears to have a fair to poor ability to sustain attention throughout extended periods of time due to her learning disorder; appears to have a poor ability to perform at a consistent pace and maintain a regular 40 hour work schedule; has a fair to good ability to interact appropriately with the general public and co-workers; appears to have a fair ability to respond to supervisors; and has a fair ability to respond appropriately to basic work setting changes. However, the undersigned gives greater weight to a second State agency physician, Dr. Walk, who opined the claimant is independent in activities of daily living and has been able to work at unskilled jobs on a sustained basis and retains the mental residual functional capacity to continue to do so. This is consistent with her ability to perform chores, handle money, a savings account and a checking account. Accordingly, Dr. [Dalton]'s opinion that she would have a fair to poor ability to perform at a consistent pace and maintain a regular 40 hour work schedule is not consistent with the evidence and is not credited. This is also consistent with the findings of Dr. Wilkin[field[4]] that would limit her to simple, repetitive tasks on a regular and continuing basis. (CAR at 15).

Plaintiff argues Dr. Walk's opinion is not supported by substantial evidence.

However, the challenged opinions are both non-examining professional assessments. There is no treating or examining physician opinion[5] to consider. Thus, one non-examining professional

---

[3]    The ALJ referred to Dr. Dalton as Dr. Daigle, which appears to be a typographical error. The state agency psychologist who reviewed plaintiff's records was Dr. Dalton, and no Dr. Daigle appears in the record. See CAR at 266-83.

[4]    The ALJ referred to Dr. Wilkenfield as Dr Wilkinson, which also appears to be a typographical error. The psychologist who examined plaintiff in August 2007, and who the ALJ's opinion refers to at exhibit 4F, is actually Dr. Wilkenfield.

[5]    Dr. Wilkenfield, a clinical psychologist the ALJ mentioned, did examine plaintiff for the Calworks program to determine whether she has any learning disorder. Dr. Wilkenfield found Plaintiff would likely benefit from individual counseling to improve her coping and stress management skills, and a literacy program due to her limited abilities. Dr. Wilkenfield also noted her limited employment background, and that she may benefit from a meeting with a vocational or occupational counsel. However, he did not find plaintiff to have any specific

1   opinion does not carry greater weight than the other, and the ALJ had a duty to resolve any

2   conflict between them. It is not for this court to substitute its opinion for that of the ALJ.  Indeed,

3   as stated above, where the evidence is susceptible to more than one rational interpretation, one of

4   which supports the ALJ's decision, that decision must be affirmed.  The ALJ's decision to rely

5   on Dr. Walk's opinion is not reversible error.  The ALJ had the duty to resolve the conflict

6   between the two opinions, which he did based on a reasonable interpretation of the evidence.  It

7   is not for this court to reevaluate the evidence, but to determine whether the ALJ's determination

8   was erroneous.  There is no basis for the undersigned to find the ALJ erred in resolving the

9   conflict between these two opinions.

10   **B.      PLAINTIFF'S CREDIBILITY**

11          Plaintiff contends the ALJ erred in his credibility determination, which was based

12   on an insufficient credibility evaluation which ignored plaintiff's explanations.

13          The Commissioner determines whether a disability applicant is credible, and the

14   court defers to the Commissioner's discretion if the Commissioner used the proper process and

15   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

16   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

17   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

18   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

19   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

20   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

21   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

22   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

23   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

24          If there is objective medical evidence of an underlying impairment, the

25   _____

26   limitations, such as a limitation in her ability to perform at a consistent pace or maintain a normal
     work week. There is also no specific assessment of plaintiff's abilities by Dr. Wilkenfield.

Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,

including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

/ / /

Here, the ALJ stated:

> In making this assessment, the undersigned has also
> considered the claimant's testimony of pain and inability to engage
> in work activity and finds her testimony not fully credible.  As
> noted, she does a wide range of activities and such activities do not
> indicate a disabling impairment of the claimant's residual
> functional capacity.  The claimant has not participated in the
> treatment normally associated with a severe pain syndrome, i.e. has
> taken various medications for headaches but often self-
> discontinues them.  Current records note she is on over-the-counter
> medication.  In addition, her testimony of migraine headaches
> about four times per month is inconsistent with her infrequent
> visits for treatment and minimal emergency room treatment.  No
> significant atrophy, neurological deficits, radicular pain, weakness,
> reflex absence, or decreased sensation were reported.  The type,
> dosage, and side effects of medication employed to treat her
> impairment would not preclude her from performing work at a
> light unskilled level.  On the basis of the foregoing, the
> undersigned concludes her allegations of limitations precluding all
> work are unsupported by the evidence.  (CAR at 15-16).

Plaintiff argues the ALJ relied on insufficient reasons, and failed to take into

consideration the reasons for plaintiff's lack of medical treatment, daily activities in relation to

her migraine headaches, and her alternatives to the use of medications.  Those reasons, as

explained in plaintiff's moving papers, include her limited ability to obtain medial treatment due

to her socio-economic status, her daily activities were directly affected by her migraine

headaches (she was only able to do the activities identified when she was not experiencing a

migraine, but was unable to do so during a migraine which occurred about once a week), and her

developing a method of coping with her headaches by remaining in bed with lights out.

Defendant responds that the ALJ used legally proper considerations for assessing plaintiff's

credibility.

The undersigned agrees that each of the reasons provided, on its own, may not be

sufficiently "clear and convincing."  However, taken together the undersigned cannot find the

ALJ erred.  The undersigned also acknowledges defendant's argument that these reasons were

not provided to the ALJ during the underlying evaluation for the ALJ to weigh.  While plaintiff

did testify that she was unable to participate in some of her daily routine activities during a

1   headache episode, her lack of medical treatment and use of prescribed medications was not

2   explained.  While Plaintiff states that her headaches have gotten worse over the years, there is no

3   increased medical treatment sought as the ALJ identified.  Plaintiff may have had limited access

4   to a neurologist, as discussed at the hearing, due to her lack of medical insurance, but she did not

5   have any emergency room visits which do not require insurance nor did she have an increase in

6   her visits to the clinics to deal with the increase headaches.  As the ALJ discussed, this is

7   inconsistent, and supportive of the ALJ's determination.  Similarly, the record supports the ALJ's

8   determination that plaintiff decided to stop certain medications on her own instead of with the

9   assistance and advise of medical professionals.  If there were adverse side-effects or insufficient

10   results obtained from the medications prescribed, there was no follow up with the prescribing

11   physician to determine the best approach, including whether additional time was required to

12   allow the medication to work.  Instead, plaintiff decided to stop the medication and treat herself

13   with her alternative coping mechanism of remaining in bed in a dark room.

14         The undersigned cannot find the ALJ's credibility determination to be

15   unsupported or based on improper considerations.  Rather, the undersigned finds the ALJ's

16   credibility determination was supported by the record as a whole.  The ALJ did not rely solely on

17   the lack of objective medical evidence to support his finding, nor can the court find that he

18   misconstrued or ignored supportive relative evidence.  While the ALJ's interpretation of

19   plaintiff's testimony and other evidence may not be the only reasonable one, it is still a

20   reasonable interpretation and is supported by substantial evidence.  Providing the ALJ's decision

21   with the proper deference, the court finds the ALJ provided clear and convincing reasons

22   supported by substantial evidence.

23        **D.  VOCATIONAL CONSULTATION**

24         Finally, plaintiff argues the ALJ erred by failing to address a vocational evaluation

25   contained in the record.  Plaintiff submitted to a five day vocational evaluation in December

26   2007, at the request of the California State Department of Rehabilitation.  The evaluation was

1   ordered to assess plaintiff's academic achievement levels and her aptitudes and abilities.

2   Plaintiff argues the ALJ failed to consider the evaluator's determination as probative "other"

3   evidence.  Defendant counters that the evaluator's report was based on plaintiff's subjective

4   complaints which the ALJ determined were not entirely credible, plaintiff told the evaluator she

5   believed she could perform full-time work, plaintiff fails to point to any specific limitation which

6   should have been included in the RFC, and the RFC determination is the duty of the ALJ not that

7   of a vocational evaluator.

8          In determining whether a claimant is disabled, an ALJ generally must consider lay

9   witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

10  919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

11  testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

12  evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

13  F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony

14  of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at

15  919.

16          The ALJ, however, need not discuss all evidence presented.  See Vincent on

17  Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

18  why "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700,

19  706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

20  which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

21  psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

22  uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

23  controverted by other medical evidence considered in the decision.  See id.  As to lay witness

24  testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

25  concluded that the evidence was properly ignored because it "conflicted with the available

26  medical evidence" assessing the plaintiff's mental capacity.  Id.

11

1          In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

2  disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness

3  had testified about the plaintiff's "inability to deal with the demands of work" due to alleged

4  back pain and mental impairments.  Id.  The witnesses, who were former co-workers testified

5  about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.

6  Noting that the lay witness testimony in question was "consistent with medical evidence," the

7  court in Stout concluded that the "ALJ was required to consider and comment upon the

8  uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to

9  work."  Id. at 1053.  The Commissioner conceded that the ALJ's silent disregard of the lay

10  testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth

11  Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at

12  1054-55.  The court concluded:

13          Because the ALJ failed to provide any reasons for rejecting competent lay
           testimony, and because we conclude that error was not harmless,
14          substantial evidence does not support the Commissioner's decision . . . .

15  Id. at 1056-67.

16          From this case law, the court concludes that the rule for lay witness testimony

17  depends on whether the testimony in question is controverted or consistent with the medical

18  evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at

19  1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must

20  consider and comment upon it.  See Stout, 454 F.3d at 1053.  However, the Commissioner's

21  regulations require the ALJ consider lay witness testimony in certain types of cases.  See Smolen

22  v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13.  That ruling requires the ALJ to

23  consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that

24  are not shown by the medical evidence.  See id.  Thus, in cases where the plaintiff alleges

25  impairments, such as chronic fatigue or pain (which by their very nature do not always produce

26  clinical medical evidence), it is impossible for the court to conclude that lay witness evidence

concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Here, the vocational evaluator discussed plaintiff's physical abilities, including her abilities to sit, stand, walk, lift, bend, and reach.  The evaluator relied predominately on plaintiff's subjective statements, which the ALJ found to be largely not credible.  In addition, these same physical abilities were address by the consultative internal medicine evaluator, Dr. Garfinkel.  The results of the two evaluations conflicted, which renders the results of the vocational evaluation controverted by the medical evidence.  As such the ALJ did not err in ignoring it and addressing the medical evaluations instead.

The issue raised by plaintiff is not related to her pain or other symptoms which are not shown by medical evidence.  Rather, plaintiff argues her inability to work a full 40-hour work week.  This inability is allegedly due to her headaches, which have been medically documented.  However, the ALJ determined that plaintiff did not suffer from the headaches to the extent she alleged, and that her claims otherwise where not credible.

The undersigned finds no error in the ALJ's RFC determination.

**E.     PAST WORK**

Plaintiff next argues the ALJ erred in determining she was capable of performing her past work on the basis that the ALJ failed to make the required factual findings as to her past relevant work.  Specifically, plaintiff argues the ALJ failed to cite specific jobs descriptions contained within the DOT or call a vocational expert to testify at the hearing.

As defendant argues, the plaintiff bears the burden at step four to prove she is incapable of performing her past work.  See Villa v. Heckler, 797 F.2d 794, 797 (9th Cir. 1986).  However, as plaintiff sets forth, while plaintiff carries the burden of proof, the ALJ is still required to set forth specific factual findings as to what plaintiff's abilities are, what her prior relevant work required, and that plaintiff retains the ability to perform her past work.  See Pinto

1    v. Masssanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Plaintiff goes further and argues that the

2    ALJ is required to make factual findings as to plaintiff's past relevant work both as it was

3    actually performed and as it is generally performed in the national economy.  However, the Ninth

4    Circuit explicitly stated in Pinto "[w]e have never required explicit findings at step four

5    regarding a claimant's past relevant work both as generally performed *and* as actually

6    performed." Id. at 845 (emphasis in original).  Rather, the ALJ must make relevant findings as to

7    whether Plaintiff can perform her past relevant work either on the basis of how the work is

8    generally performed or as she actually performed it.

9            Here, the ALJ relied on plaintiff's information as to how she actually performed

10   her past relevant work.  The ALJ stated she is capable of performing her past relevant work as an

11   assembler and pricer, as "[t]hese jobs require no more than light work activity and do not require

12   the performance of more than simple, repetitive tasks."  (CAR at 16).

13           Exertional work levels have been defined, providing a working definition of the

14   different levels of exertion required to perform certain work.  "Light work" has been defined as

15   that involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

16   weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  Thus, the ALJ's

17   rather conclusory finding that plaintiff's past relevant work requires no more than light work

18   activity can be defined as requiring lifting no more than 20 pounds.  There is support in the

19   record for finding plaintiff's prior relevant work required lifting no more than 20 pounds,

20   including the work history report plaintiff provided.  (CAR 96-86).  Plaintiff stated that she was

21   only required to lift up to ten pounds in job number one, and up to 20 pounds in job number two.

22   The ALJ found plaintiff capable performing light work, specifically finding plaintiff capable of

23   lifting 20 pounds occasionally and ten pounds frequently.  (CAR at 15).  The "factual finding"

24   that plaintiff's past relevant work requires no more than light work may therefore be sufficient as

25   to that restriction.

26   / / /

14

1        However, the RFC also includes a restriction that Plaintiff is only capable of

2 performing simple, repetitive tasks consistent with unskilled work.  The work history report

3 plaintiff provided sets forth that job number one required the use of machines, tools or equipment

4 as well as writing and completing reports; however, it did not require the use of technical

5 knowledge or skills.  Thus, job number one could perhaps be classified as unskilled work

6 performing simple, repetitive tasks.  However, as for job number two, plaintiff indicates she was

7 required to use technical knowledge or skill in the performance of that job.  The ALJ failed to

8 make any factual findings as to the skill requirements of plaintiff's prior relevant work.  Because

9 the ALJ did not make those factual findings, there are no factual findings for the court to review.

10 The undersigned finds that the conclusory statement that plaintiff's past relevant work "do not

11 require the performance of more than simple, repetitive tasks" is insufficient to meet the ALJ's

12 duty to support his conclusion, especially in light of description of job number two provided by

13 plaintiff.  Thus, while the conclusion may be correct, the ALJ made reversible error in failing to

14 support his conclusion with a sufficient factual finding for this court to review.

15        **F.    APPROPRIATE  REMAND**

16         Finally, plaintiff contends this case requires remand for payment rather than

17 remand for further proceedings.  The undersigned does not agree.  The ALJ's failure to set forth

18 the factual findings to support his conclusion that plaintiff is capable of performing her past

19 relevant work is an insufficient basis to remand for payment.  Rather, a remand for further

20 proceedings is appropriate.

21           **IV.  CONCLUSION**

22         For the foregoing reasons, this matter will be remanded under sentence four of 42

23 U.S.C. § 405(g) for further development of the record and/or further findings addressing the

24 deficiencies noted above.

25         Accordingly, IT IS HEREBY ORDERED that:

26         1.      Plaintiff's motion for summary judgment (Doc. 14) is granted;

1          2.      The Commissioner's cross motion for summary judgment (Doc. 19) is

2    denied;

3          3.      This matter is remanded for further proceedings consistent with this order;

4    and

5          4.      The Clerk of the Court is directed to enter judgment and close this file.

6

7    DATED:  March 11, 2011

8

9                                              CRAIG M. KELLISON
                                               UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26